IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


RONALDO DESIGNER JEWELRY, INC.                    PLAINTIFF

v.                          CIVIL ACTION NO. 5:14-cv-73-DCB-MTP

PHILLIP PRINZO                                    DEFENDANT


## MEMORANDUM OPINION AND ORDER

This cause came before the Court on a hearing on damages on
July 10, 2017.  Counsel and witnesses for the plaintiff Ronaldo
Designer Jewelry, Inc. ("Ronaldo") appeared.  The pro se
defendant, Phillip Prinzo ("Prinzo") did not appear despite
having been advised of the hearing on several occasions.  The
Court now therefore makes the following findings of fact and
conclusions of law, based on the evidence submitted at the
hearing:

## FINDINGS OF FACT

Defendant Ronaldo filed its Verified Complaint in this case
alleging that Prinzo willfully infringed Ronaldo's copyrights in
its "Gold Craft Associates Dealer Handbook," "Gold Craft
Fashions," and "Gold Craft Associates Fall Catalog 2000" catalogs
and "The Power of Prayer Bracelet," "Stackable Bracelet," "THE
LOVE KNOT," "The Tranquility Bracelet," "The Angelina Bracelet,"
"The Spring Time Bracelet," "I Love You," "TRC-S297 Birthstone
Bracelet," "Forever Fellowship Bracelet," and the "Pearl of My
Heart" jewelry designs (collectively, the "Works" or "Ronaldo's

Works"); willfully infringed Ronaldo's "THE POWER OF PRAYER" BRACELET® trademark; willfully infringed Ronaldo's "Kissing Roof" clasp design trade dress; and otherwise engaged in unfair competition and false advertising by representing to customers that he was authorized to make and sell Ronaldo's copyrighted jewelry designs and jewelry incorporating Ronaldo's proprietary trade dress. Copies of Ronaldo's copyrighted catalogs and photographic representations of its jewelry designs were incorporated as Exhibits B, C, D, E, I, K, N, Q, T, W, Z, BB and DD to the Verified Complaint [DE 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8, 2-9, 2-10, 2-16, 2-18, 2-21, 2-24, 2-27, 2-30, 2-33, 2-35, 2-37]. Photographic representations of Prinzo's allegedly infringing jewelry were incorporated as Exhibits F, J, L, O, R, U, X, AA, CC, and EE to the Verified Complaint [DE 2-11, 2-17, 2-19, 2-22, 2-25, 2-28, 2-31, 2-34, 2-36, 2-38]. Prinzo was properly served and submitted a letter addressed to the Court [DE 27], which, by Order of the Court [DE 53] was deemed as Prinzo's Answer to the Verified Complaint.

On October 21, 2016, Ronaldo filed its Motion for Discovery Sanctions [DE 83] and Motion to Hold Defendant in Contempt [DE 85], as well as corresponding Memoranda in support [DE 84 and 86]. On December 20, 2016, the Court granted in part and denied in part Ronaldo's Motion for Discovery Sanctions [DE 83] and Motion to Hold Defendant in Contempt [DE 85], and entered an

Order [DE 93] ordering Prinzo to comply with various Court Orders and produce certain discovery within ten (10) days or a default judgment would be entered against him. Prinzo failed to comply with the Court's Order and, on February 3, 2017, the clerk entered default against Prinzo [DE 98]. On November 30, 2016, Ronaldo filed its Motion for Summary Judgment [DE 91] and Memorandum in Support [DE 92]. Ronaldo filed its Motion for Default Judgment [DE 99] on February 10, 2017. On May 10, 2017, the Court entered its Order [DE 104] granting Ronaldo's Motion for Default Judgment [DE 99] and Motion for Summary Judgment [DE 91] and, thus, found Prinzo liable for willful copyright infringement, willful trademark infringement, willful trade dress infringement, unfair competition, and false advertising.

On July 10, 2017, the Court heard arguments and testimony relating to damages. The Court took judicial notice of the evidence submitted with Ronaldo's Motion for Summary Judgment [DE 91] and the Memorandum of Support [DE 92]. Ronaldo also presented the testimony of Ronaldo's Executive Vice President, Michael Scheser, and its expert W. Whitaker Rayner, who testified as to the reasonableness of Ronaldo's attorney fees and costs.

**Damages Under the Copyright Act**

For its claim for willful copyright infringement, Ronaldo elected statutory damages and sought damages in the amount of $30,000 per eligible infringement. The Court finds that, of the

thirteen (13) copyrighted works infringed by Prinzo, four (4) were registered within three (3) months of first publication or prior to Prinzo's infringement and, thus, are eligible for statutory damages. Ronaldo's "Gold Craft Associates Dealer Handbook" jewelry design and catalog (Cert. of Reg. VA 1-140-610/Suppl. Reg. VA 1-170-689) was registered effective as of November 13, 2001. See Cert. of Reg. [DE 2-1 – 2-7/92-1]. Ronaldo's "Gold Craft Fashions" jewelry design and catalog (Cert. of Reg. VA 1-125-963) was registered effective as of December 7, 2001. See Cert. of Reg. [2-8/92-1]. Ronaldo's "Gold Craft Associates Fall Catalog 2000" jewelry design and catalog was registered effective as of December 7, 2001. See Cert. of Reg. [2-9/92-1]. Ronaldo's "The Spring Time Bracelet" (Cert. of Reg. VA 1-858-088/ Suppl. Reg. VA 1-433-482) was first published on or after March, 2013 and was registered within three months effective as of April 26, 2013. See Verified Complaint at ¶49 [DE 1] and Cert. of Reg. [2-29/92-2]. Ronaldo first discovered Prinzo's infringing works in November of 2011. See Verified Complaint at ¶11 [DE 1]. The invoices attached to Ronaldo's Motion for Summary Judgment show sales by Prinzo in that general time frame. None of Prinzo's sales occurred prior to registration of Ronaldo's respective catalogs. See Appendix 13 to Mem. in Support of Mot. for Summ. Judg. [DE 92-13]. Prinzo at no time submitted evidence of sales prior to the respective dates

of registration.

Ronaldo argued that enhanced statutory damages should be awarded as a result of Prinzo's willful copyright infringement. The Court found Prinzo's infringement was willful when summary judgment on liability was granted. The Court based this finding on Prinzo's knowledge of and past relationship with Ronaldo's predecessor-in-interest entity (See Mutual Release Agreement [92-3]); Prinzo's deemed admission of intentional copying (See Req. for Admis. Nos. 5-6 [92-4] deemed admitted pursuant to the Court's October 3, 2016 Order [DE 80]); Prinzo's actual admission that the Mutual Release Agreement on which he allegedly relied for justification did not, in fact, give him a right to copy (See Prinzo Dep. at 71); Prinzo's copying of Ronaldo jewelry designs that were created after Prinzo's relationship with Ronaldo ended and to which the Mutual Release Agreement could not possibly apply (See Verified Complaint at ¶¶ 9, 26, 40, 49, 57, 65 [DE 1] and Certs. of Reg. for "The Power of Prayer Bracelet," "The Angelina Bracelet," "TRC-S297 Birthstone Bracelet," and "The Spring Time Bracelet" [DE 92-2]); Prinzo's use of the business name of Ronaldo's predecessor-in-interest entity (See Prinzo Catalogs and Invoices [92-5, 92-6, 92-9, 92-10]. Compare Mutual Release Agreement [92-3] granting Prinzo the right to use the name "Gold Craft Fashions."); the striking similarity of Prinzo's catalogs and jewelry designs to Ronaldo's copyrighted catalogs

and jewelry designs and the sheer number of works copied by Prinzo (See comparisons of catalogs [DE 92-1, 92-5, 92-6] and comparison of works in Mot. for Summ. Judg. [DE 92]); and the actual admission of Prinzo's girlfriend, Janice Bintrim, that she directly copied and manipulated pages from Ronaldo's catalogs for Prinzo to use in his own catalog (See Bintrim Dep. at 45-51). The Court finds that enhanced damages are further justified by Prinzo's bad faith and obstructive conduct in this litigation, which are detailed in the Court's Order [DE 93] partially granting the discovery sanctions and contempt finding requested by Ronaldo. Prinzo's conduct included, without limitation, Prinzo's refusal to participate in the discovery process or produce records from which actual damages could be determined, as well as the inference of willfulness from Prinzo's ordered default in this matter [DE 104].

**Damages Under the Lanham Act**

For its claims of willful trademark infringement, willful trade dress infringement, unfair competition, and false advertising under the Lanham Act, Ronaldo requested actual damages trebled. The Court finds that Prinzo sold various bracelets totaling at least $27,696.75. See Invoices gathered by Ronaldo, found at [DE 92-13]. Given the cryptic nature of Prinzo's invoices, Ronaldo could only specifically attribute sales of at least $6,809.00 to sales of infringing copies of

Ronaldo's "The Power of Prayer Bracelet," "Stackable Bracelet," "THE LOVE KNOT," "The Angelina Bracelet," "The Spring Time Bracelet," and the "Pearl of My Heart" jewelry designs, most of which copy Ronaldo's "Kissing Roof" clasp design trade dress. Of the bracelets sold, the Court finds that Prinzo sold at least 55 bracelets using variations of or terms substantially similar to Ronaldo's "THE POWER OF PRAYER" BRACELET® trademark for a total of $2,305.00 as evidenced by his use of such terms as "Prayer Bracelet" or abbreviations thereof in the invoices and on at least one bracelet tag. The Court finds that half of Prinzo's invoices infringing Ronaldo's trademark were dated after the trademark was registered on December 4, 2012 and all of the aforementioned bracelets were sold through Prinzo's false representations that he was authorized to copy and sell Ronaldo designs. The Courts further finds that Prinzo's refusal to participate in discovery or produce records of his sales makes it impossible to determine the actual number of Prinzo's infringing sales. Prinzo failed to submit any evidence of costs or deductions related to such sales.

Ronaldo argued that, had Prinzo participated in good faith in the discovery process, Ronaldo would be able to identify more infringing sales. Ronaldo argued that damages should be trebled due to Prinzo's intentional conduct and obstruction of the discovery process. The Court found Prinzo's infringement was

intentional when summary judgment on liability was granted [DE 104]. The Court based this finding on Prinzo's knowledge of and past relationship with Ronaldo's predecessor-in-interest entity; Prinzo's deemed admission of intentional copying (See Req. for Admis. No. 14 [DE 92-4] deemed admitted pursuant to the Court's October 3, 2016 Order [DE 80]); Prinzo's actual admission of using terms substantially similar to Ronaldo's trademark (See Prinzo Dep. at 55-57; see also Bintrim Dep. at 36); Prinzo's actual admission that the Mutual Release Agreement on which he allegedly relied for justification did not, in fact, give him a right to copy (See Prinzo Dep. at 71); Prinzo's admission that he provided copies of the Mutual Release Agreement to one customer to allay the customer's concerns and induce the customer to buy from Prinzo and the statements from yet another customer as to similar conduct by Prinzo (See Prinzo Dep. at 75); Prinzo's continued use of terms substantially similar to Ronaldo's trademark after it was registered (See Prinzo Invoices [DE 92-9, 92-10, 92-13]); Prinzo's use of the business name of Ronaldo's predecessor-in-interest entity (See Prinzo Catalogs and Invoices [DE 92-5, 92-6, 92-9, 92-10, 92-13]. Compare Mutual Release Agreement [92-3] granting Prinzo the right to use the name "Gold Craft Fashions."); and the actual admission of Prinzo's girlfriend, Janice Bintrim, that she directly copied and manipulated pages from Ronaldo's catalogs for Prinzo to use in

his own catalog (See Bintrim Dep. at 45-51). The Court finds
that treble damages are further justified by Prinzo's bad faith
and obstructive conduct in this litigation, which conduct was
detailed in the Court's Order [DE 93] partially granting the
discovery sanctions and contempt finding requested by Ronaldo and
included, without limitation, Prinzo's refusal to participate in
the discovery process or produce records from which actual
damages could be determined.

**Attorney Fees and Costs**

Ronaldo argued that it is entitled to recovery of its
reasonable attorney fees and costs under both the Copyright Act
and Lanham Act. In its summary judgment motion, Ronaldo
presented testimony as to the amount and payment of attorney fees
and costs leading up to and submitted with Ronaldo's Motion for
Summary Judgment. Ronaldo also presented the testimony of W.
Whitaker Rayner, a local attorney with a long-standing reputation
and significant experience in the area of intellectual property.
Mr. Rayner testified that, in his expert opinion, the attorney
fees and costs submitted by Ronaldo were reasonable in light of
the work required in this matter.

The Court finds that Ronaldo's lead counsel, Kyle Anne
Citrynell, a partner with the law firm of Seiller Waterman LLC,
has been practicing law for 36 years in the area of intellectual
property, including but not limited to copyright litigation.

Over the three years of this litigation, Ms. Citrynell billed 165.85 hours at rates from $325 to $340 per hour for a total legal fee associated with her work of $56,177.00.

The Court finds that C. Shawn Fox, a non-equity partner with the law firm of Seiller Waterman LLC, has been practicing law for 16 years in the area of intellectual property, including but not limited to copyright litigation. Over the three years of this litigation, Mr. Fox billed 186.70 hours at rates from $260 to $285 per hour for a total legal fee associated with his work of $52,908.00.

The Court finds that Christopher A. Bates, a non-equity partner with the law firm of Seiller Waterman LLC, has been practicing law for more than 18 years in the area of intellectual property, including but not limited to copyright litigation. Over the three years of this litigation, Mr. Bates billed 11.65 hours at rates from $280 to $285 per hour for a total legal fee associated with his work of $3,274.50.

The Court finds that Keith J. Larson, an associate with the law firm of Seiller Waterman LLC, billed 165.85 hours at a rate of $250 per hour for a total legal fee associated with his work of $2,862.50.

The Court finds that Morgan K. Mottley, formerly a law clerk and now an associate with the law firm of Seiller Waterman LLC billed 4.7 hours at rates of $125 per hour as a law clerk and

$225 per hour as an attorney for a total legal fee associated with her work of $587.50.

The Court finds that Laura A. Bevarly, a paralegal with the law firm of Seiller Waterman LLC, billed 17.75 hours at rates from $95 to $110 per hour for a total legal fee associated with her work of $1,710.25.

The Court finds that Karen K. McWhorter, a paralegal with the law firm of Seiller Waterman LLC, billed 14.0 hours at a rate of $100 per hour for a total legal fee associated with her work of $1,400.00.

The Court finds that Colleen M. Hawk, a paralegal with the law firm of Seiller Waterman LLC, billed 12.10 hours at a rate of $125 per hour for a total legal fee associated with her work of $1,512.50.

The Court finds that Seiller Waterman LLC billed $925 for other law clerk time in this case.

The Court finds that Ronaldo's local counsel, Alec M. Taylor, a partner with the law firm of Krebs Farley PLLC, has been practicing law for almost 9 years in the area of litigation, including but not limited to copyright litigation. Over the three years of this litigation, Mr. Taylor billed 102.4 hours at a current rate of $250 per hour for a total legal fee associated with his work of $24,530.50.

The Court finds that Ronaldo also incurred taxable costs of

$110 for service of process fees and incurred $6,560.17 in delivery fees, outside copies, deposition fees, and other document fees billed by Seiller Waterman LLC. Ronaldo incurred $1,887.45 in taxable costs for service of process fees, delivery fees, outside copies, deposition fees, and other document fees billed by Krebs Farley PLLC and $1,109.03 in travel and other non-taxable costs.

The Courts finds that Ronaldo incurred attorney fees and costs totaling $155,554.40. Ronaldo's expert, Mr. Rayner, testified that the hourly rates charged by Ronaldo's attorneys and their staffs were reasonable in light of their experience and the specialized nature of intellectual property litigation, and that the delegation of duties between partners, associates, paralegals and law clerks, and the time expended by each was reasonable in light of the tasks required in this matter. Mr. Rayner concluded that, while he believed an entry or two totaling a few hundred dollars may have been unreasonable or unnecessary, the total fees and costs were reasonable, particularly in light of the fact that Ronaldo has not sought recovery of more than $15,000 in fees and costs it incurred after submitting the above attorney fees and costs. Mr. Rayner also testified that attorney fees and costs of approximately $50,000 per year for a case in litigation pending three years is reasonable and typical. The Court agrees with the testimony of Mr. Rayner and finds that the

attorney fees and costs requested are reasonable.

The Court also finds that Ronaldo is the prevailing party, having succeeded on both a Motion for Default Judgment and a Motion for Summary Judgment. The Court further finds that Prinzo's positions and defenses asserted in this matter were objectively unreasonable. Prinzo's asserted defense – that the Mutual Release Agreement signed by the parties upon his termination granted Prinzo the authority to copy Ronaldo's catalogs, jewelry designs, and trade dress – lacked any merit whatsoever, which Prinzo admitted (See Prinzo Dep. at 75) and the Court so ruled in its Order Granting Motion for Preliminary Injunction [DE 78]. Prinzo's positions with regard to discovery matters and orders of the Court, as well as his lack of participation and obstructive conduct, were also unreasonable and caused Ronaldo to unnecessarily incur increased fees and costs. As indicated by the invoices submitted in this matter [DE 9-13], the Court finds that the majority of Prinzo's infringements of Ronaldo's "THE POWER OF PRAYER" BRACELET® trademark occurred after December 4, 2012, when such trademark was registered by the United States Patent and Trademark Office [DE 92-8]. The Court also finds that Prinzo's infringement of Ronaldo's copyrighted catalogs and jewelry designs, as well as his infringement of Ronaldo's trademark and trade dress, were willful and intentional. The Court finds that the circumstances of this case

qualify as an exceptional case under the Lanham Act. For the reasons set forth above, this Court finds that an award of attorney fees and costs to Ronaldo is justified and proper.

**Permanent Injunction**

On September 19, 2016, the Court granted a Preliminary Injunction [DE 79] enjoining Prinzo from copying, manufacturing, reproducing, importing, publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market the infringing jewelry, marketing, and advertising. Ronaldo seeks to have the Preliminary Injunction converted to a Permanent Injunction. This Court finds that the same reasons justifying a preliminary injunction remain present and that converting the Preliminary Injunction to a Permanent Injunction is warranted.

**Contempt**

In its Order dated May 10, 2017 [DE 104], the Court ordered Prinzo to appear at the damages hearing held on July 10, 2017 and produce the records identified in Exhibit A to the Amended Notice to Take Deposition [DE 46-1] or be held in contempt of court until such time as he purges himself of contempt. Prinzo failed to appear or produce the required records.

Prinzo has continuously and frequently failed to obey the Court's orders in this matter. The Court set forth Prinzo's multiple failures in its Order [DE 93] adopting the Report and Recommendation of Magistrate Parker and ordering Prinzo to comply

with prior Court Orders [DE 71 and 74] or face entry of default judgment. In its Order [DE 93], the Court found that "Prinzo has therefore demonstrated that less drastic sanctions [orders to comply, monetary sanctions] would not achieve a deterrent effect." Even the threat of entry of default judgment was insufficient to induce Prinzo to comply and he, once again, failed to comply with the Court's Order. [DE 104] The Court finds that further monetary or less drastic sanctions would have no deterrent effect and would be to no avail.

## CONCLUSIONS OF LAW

Ronaldo seeks recovery of statutory damages under the Copyright Act, actual damages under the Lanham Act, attorney fees and costs under both the Copyright Act and Lanham Act, and a permanent injunction under both the Copyright Act and Lanham Act. It is not considered dual recovery to seek statutory copyright damages and actual damages under the Lanham Act. See Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1010-11 (9th Cir. 1994) citing Nintendo of Am., Inc. v. Ketchum, 830 F.Supp. 1443, 1446 (M.D. Fl. 1993)(awarding both statutory damages under the Copyright Act and lost profits damages under the Lanham Act) and Nintendo of Am., Inc. v. NTDEC, 822 F.Supp. 1462 (D. Ariz. 1993); see also Microsoft Corp. v. Computer Care Ctr., Inc., 2008 WL 9359718 (E.D. N.Y. Sept. 10, 2008)(unpublished).

**Statutory Damages Under the Copyright Act**

For its claims of copyright infringement, Ronaldo elected statutory damages under 17 U.S.C. §504(c) and seeks recovery of $120,000 ($30,000 each for four qualifying infringements). A copyright holder is entitled to statutory damages for works registered prior to infringement or registered within three months of first publication. See 17 U.S.C. §412. As stated above, Prinzo is liable for thirteen (13) counts of copyright infringement, of which four (4) are eligible for statutory damages under 17 U.S.C. §504(c).

Statutory Damages may be awarded per infringement as follows:

    Innocent Infringement - $200 - $750
    Non-Willful Infringement - $750 - $30,000
    Willful Infringement - Up to $150,000

See 17 U.S.C. §504(c). Willful copying is defined as "actions [that] were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 394 (5th Cir. 2014) (brackets in original), citing Berg v. Symons, 393 F.Supp.2d 525, 540 (S.D. Tex. 2005). As stated above, the Court finds that Prinzo's infringing conduct was willful.

Willfulness may also be inferred from Prinzo's failure to continue to defend the lawsuit. See Microsoft Corp., supra, at *28 (citing Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 124

16

(S.D. N.Y. 2003)(willfulness may be inferred from default alone)). Prinzo actively obstructed the litigation process. Magistrate Judge Parker set forth a laundry list of ways in which Prinzo "generally disregarded court rules and orders throughout the case" in his Order imposing discovery sanctions on Prinzo [DE 74], and the Court subsequently found that Prinzo "generally obstructed the discovery process" in its Order [DE 93] granting, in part, Ronaldo's motions to hold Prinzo in contempt and for discovery sanctions for failure to comply with a court order.

The Court finds enhanced damages of up to $150,000 per eligible infringement are justified due to Prinzo's willfulness. Because Ronaldo has not requested more, the Court will award damages at the high end of non-willful infringement of $30,000 per infringement for a total of $120,000.

**Actual Damages Under the Lanham Act**

With regard to its claims for trademark and trade dress infringement, unfair competition, and false advertising under the Lanham Act, Ronaldo seeks recovery of Prinzo's profits of $6,809 trebled for a total of $20,427. For infringements of unregistered trademarks and trade dress, as well as for unfair competition or false advertising, the Court has discretion to award damages not exceeding three times the amount of actual damages (which, in this case, consist of Prinzo's profits). See 15 U.S.C. §1117(a). For infringement of a registered trademark,

recovery of treble damages is mandatory, unless extenuating circumstances are present. See 15 U.S.C. §1117(b). The Court finds that half of Prinzo's invoices infringing Plaintiff's Mark were dated after Plaintiff's Mark was registered on December 4, 2012 and, thus, recovery of treble damages should be mandatory.

Regardless of whether treble damages are mandatory, the Court finds that Prinzo's conduct was willful and intentional, and justifies recovery of treble damages. See Taco Cabana Int'l., Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1127 (5th Cir. 1991) aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992). Furthermore, in this case, Prinzo did not cooperate and refused to produce his sales records despite Court orders to do so. See Orders [DE 71, 74, 93, 104]. The fact that Ronaldo cannot possibly know the full extent of Prinzo's sales as a result of Prinzo's obstructive conduct further justifies trebling the damages for the limited sales Ronaldo has been able to discover from other sources. See Taco Cabana, 932 F.2d at 1127, citing Boston Professional Hockey Ass'n. v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 77 (5th Cir. 1979) (increased damages justified where defendant withholds or misrepresents available sales records or otherwise obstructs plaintiff's ascertainment of damages); see also CrossFit, Inc. v. Columbus CrossFitness, LLC, 2014 WL 2711972 (N.D. Miss. June 16, 2014) (unpublished) (defendant's failure to participate, making damages

difficult to ascertain, was sufficient to enhance damages and award attorney fees).

In this case, Ronaldo states that it is only aware of Prinzo sales totaling $27,696.75 [DE 92-13]. Given the limited descriptions and cryptic nature of Prinzo's invoices, Ronaldo states that it can only specifically attribute $6,809 of such sales to Prinzo's infringing works. All of Prinzo's remaining sales may well be attributable to Prinzo's infringing works, but Ronaldo states that at this time, it simply cannot identify the works to which the remaining sales are attributable. Pursuant to 15 U.S.C. §1117, in calculating Prinzo's profits, Ronaldo must only prove Prinzo's sales. Prinzo must submit evidence demonstrating his reasonable costs and deductions. Prinzo has submitted no such costs or deductions. Accordingly, the Court shall grant damages in the amount of $20,427.00 ($6,809.00 x 3).

**Attorney Fees and Costs Under the Copyright Act and Lanham Act**

Ronaldo seeks recovery of its reasonable attorney fees pursuant to 17 U.S.C. §505 and 15 U.S.C. §1117. Section 505 allows recovery of attorney fees to a prevailing party in a copyright infringement action. The Court is allowed discretion as to whether to award fees, giving substantial weight to the objective reasonableness of the losing party's position, although other factors (such as a party's litigation misconduct) may also justify an award of fees. See Kirtsaeng v. John Wiley & Sons,

<u>Inc.</u>, 136 S.Ct. 1979, 1988 (2016).

In copyright cases, "[a]lthough attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." <u>Micromanipulator Co. v. Bough</u>, 779 F.2d 255, 259 (5th Cir. 1985), <u>citing</u> <u>Engel v. Teleprompter Corp.</u>, 732 F.2d 1238, 1241 (5th Cir. 1984).

As stated above, Prinzo's position that the Mutual Release Agreement granted him authority to copy was entirely unreasonable (as he ultimately admitted), and his litigation conduct was designed to obstruct the litigation process and caused Ronaldo to incur excessive fees. Either circumstance justifies an award of fees under 17 U.S.C. §505. <u>See</u> <u>Kirtsaeng</u>, 136 S.Ct. at 1988.

In cases of trademark and trade dress infringement, unfair competition, and false advertising, all of which are governed by the Lanham Act, 15 U.S.C. §1117 allows for recovery of attorney fees. For infringements of unregistered trademarks and trade dress, recovery of attorney fees is limited to exceptional cases. <u>See</u> 15 U.S.C. §1117. For infringement of a registered trademark, recovery of reasonable attorney fees is mandatory, unless extenuating circumstances are present. <u>See</u> 15 U.S.C. §1117. As stated above, half of Prinzo's infringing sales occurred after registration of Ronaldo's trademark, justifying a mandatory award of attorney fees under 15 U.S.C. §1117. Regardless of whether an attorney fees award is mandatory, Prinzo's conduct was willful

and intentional, and falls into the exceptional category justifying recovery of reasonable attorney fees.  See Taco Cabana, 932 F.2d at 1127; see also CrossFit, 2014 WL 2711972. Prinzo's lack of participation and obstructive conduct further justify an award of attorney fees.  Id.

Ronaldo also requests recovery of its costs incurred in this action, including both taxable and non-taxable costs.  Ronaldo's taxable costs are recoverable pursuant to 28 U.S.C. §1920.  The non-taxable costs requested by Ronaldo are recoverable under the Copyright Act.  See 17 U.S.C. §505 (prevailing party may recover "full costs"); Guzman v. Hacienda Records & Recording Studio, Inc., 2015 U.S. Dist. LEXIS 108360 *4 (S.D. Tex. Dec. 14, 2015)("In stark contrast to the list of taxable costs in section 1920, the copyright statute contains no such list and just refers to 'full costs.'  It must cover more costs than those listed in section 1920 or there would be no effect given to the different statutory language.") citing Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869, 885 (9th Cir. 2005)("Construing §505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute."); see also Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries, 272 F.3d 441, 458 (7th Cir. 2001)("any award of fees and non-taxable costs must come through [§505], and not through the general costs provisions of 28 U.S.C.

§1920"); <u>InvesSys, Inc. v. McGraw-Hill Co., Ltd</u>. 369 F.3d 16, 23 (1st Cir. 2004); <u>Coles v. Wonder</u>, 283 F.3d 798, 803 (6th Cir. 2002). <u>Compare Tempest Publ'q, Inc. v. Hacienda Records & Recording Studio, Inc.</u>, 141 F.Supp.3d 712 (S.D. Tex. 2015); <u>Pinkham v. Camex, Inc</u>., 84 F.3d 292 (8th Cir. 1996)(per curiam); <u>Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co</u>., 275 F.3d 1038 (11th Cir. 2001). Such non-taxable costs are also recoverable under the Lanham Act. <u>See</u> 15 U.S.C. §1117 (prevailing party may recover "costs of the action").

Ronaldo submitted attorney fees and costs totaling $155,554.40. In evaluating what is a reasonable fee, courts consider a variety of factors. In <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), the Fifth Circuit enumerated the following twelve factors:

> 1) the time and labor involved;
>
> 2) the novelty and difficulty of the questions;
>
> 3) the level of skill required to perform the legal service properly;
>
> 4) the preclusion of employment by the attorney due to acceptance of the case;
>
> 5) the attorney's customary hourly rate;
>
> 6) whether the fee is fixed or contingent;
>
> 7) the time limitations imposed by the client or the circumstances;

8) the scope of the misconduct and the results obtained;

9) the experience, reputation and ability of the attorneys;

10) the undesirability of the case;

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

Attorney rates are generally, but not always, evaluated in comparison to the prevailing rates in the district in which the court sits. Sometimes, legal markets may be defined by practice area, in which case the court may adjust the base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel. See Microsoft Corp., supra, 2008 U.S.Dist. LEXIS 112080, at *28., quoting Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany, 484 F.3d 162, 171, 163 (2nd Cir. 2007).

In Microsoft (a case involving a similar default judgment as a sanction under Rule 37 for the defendant's dilatory conduct), the district court evaluated the claimed hourly rates, the attorneys' staffing of the case, and time expended by each individual. Cases evaluating the use of both out-of-state lead counsel and local counsel have allowed the recovery of both fees, finding that they were not duplicative given the nature of the

responsibilities of each.  See Broadcast Music, Inc. v. Xanthas, Inc., 685 F.Supp. 134 (E.D. La. 1988).

As noted above, W. Whitaker Rayner testified that the hourly rates charged by Ronaldo's attorneys and their staffs were reasonable in light of their experience and the specialized nature of intellectual property litigation and the delegation of duties between partners, associates, paralegals, and law clerks, and the time expended by each was reasonable in light of the tasks required in this matter.  The Court agrees and finds that such attorney fees and costs are reasonable.  Accordingly, the Court grants an award of $155,554.40 for attorney fees and costs pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117.

**Permanent Injunction Under the Copyright Act and Lanham Act**

On September 19, 2016, the Court granted a Preliminary Injunction [DE 79] enjoining Prinzo from copying, manufacturing, reproducing, importing, publishing, displaying, distributing, transmitting, selling, or otherwise placing on the market the infringing jewelry, marketing, and advertising.  Ronaldo seeks to have the Preliminary Injunction converted to a Permanent Injunction.  The Court finds that the same reasons justifying a preliminary injunction remain present, and that converting the Preliminary Injunction to a Permanent Injunction is warranted. In its Order [DE 104] granting Ronaldo's Motion for Default Judgment [DE 99] and Motion for Summary Judgment [DE 91], the

Court found Prinzo liable for violations of the Copyright Act and Lanham Act, both of which justify injunctive relief in this matter. <u>See</u> 17 U.S.C. §502 and 15 U.S.C. §1116.

**<u>Contempt</u>**

The Court has broad discretion to exercise its various sanctioning powers. <u>Topalian v. Ehrman</u>, 3 F.3d 931, 934 (5th Cir. 1993); <u>Shipes v. Trinity Indus</u>., 987 F.2d 311, 323 (5th Cir. 1993)("The imposition of sanctions is a matter of discretion for the district court."). Federal Rule of Civil Procedure 37(b) further allows for sanctions when a party fails to obey a discovery order, including finding a party in contempt of court.

As stated above, Prinzo has continuously and frequently failed to obey court orders in this case. In its Order dated May 10, 2017 [DE 104], the Court ordered Prinzo to appear at the damages hearing held on July 10, 2017 and produce the records identified in Exhibit A to the Amended Notice to Take Deposition [DE 46-1] or be held in contempt of court until such time as he purges himself of contempt. Prinzo failed to appear or produce the required records. Accordingly, this Court finds Prinzo in civil contempt of court until such time as he purges himself of contempt by producing the records identified in Exhibit A to the Amended Notice to Take Deposition [DE 46-1]. Prinzo may purge himself of contempt by producing said records within twenty (20) days from the date of entry of this Order.

The defendant is further warned not to destroy the records he has been ordered to produce. To do so could result in a finding of criminal contempt and/or additional sanctions.

IN CONCLUSION, THE COURT ORDERS AS FOLLOWS:

IT IS HEREBY ORDERED that the plaintiff, Ronaldo Designer Jewelry, Inc., is awarded $30,000.00 in damages per infringement, for each of the four works registered prior to infringement or within three months of first publication, for a total award of $120,000.00 pursuant to 17 U.S.C. §504(c) for the defendant's willful copyright infringement;

FURTHER ORDERED that the plaintiff, Ronaldo Designer Jewelry, Inc., is awarded recovery of Prinzo's actual profits of $6,809 trebled for a total of $20,427 pursuant to 15 U.S.C. §1117 for willful trademark and trade dress infringement, unfair competition, and false advertising;

FURTHER ORDERED that the plaintiff is awarded $155,554.40 for attorney fees and costs pursuant to 17 U.S.C. §505 and 15 U.S.C. §1117;

FURTHER ORDERED that the Preliminary Injunction [DE 79] entered in this matter shall be converted to a Permanent Injunction pursuant to 17 U.S.C. §502 and 15 U.S.C. §1116;

FURTHER ORDERED that the defendant, Phillip Prinzo, be held in civil contempt of court until such time as he purges himself of contempt by producing the records identified in Exhibit A to

the Amended Notice to Take Deposition [DE 46-1]. Until the defendant purges himself of civil contempt, the Court reserves jurisdiction to impose additional sanctions and/or a finding of criminal contempt if warranted;

FURTHER ORDERED that counsel for plaintiff shall submit a proposed Final Judgment in accordance with the above Findings of Fact and Conclusions of Law to the undersigned District Judge via electronic mail within seven (7) days from date of entry of this Order, and shall also provide a copy to the pro se defendant. Any objections to the form of the proposed Final Judgment must be made within seven (7) days from the date of delivery of the proposed judgment to the defendant;

FURTHER ORDERED that counsel for plaintiff shall also submit a proposed separate Permanent Injunction in accordance with the above Findings of Fact and Conclusions of Law to the undersigned District Judge via electronic mail within seven (7) days from date of entry of this Order, and shall also provide a copy to the pro se defendant. Any objections to the form of the proposed Permanent Injunction must be made within seven (7) days from the date of delivery of the proposed injunction to the defendant.

SO ORDERED, this the 21st day of August, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE